FILED 29 JUL '11 11:44 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| TED A. BJORDAL, | ) | |
| | ) | |
| Plaintiff, | ) | CV 09-1216-TC |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

COFFIN, Magistrate Judge:

Plaintiff Ted Bjordal appeals the Commissioner's decision denying his application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be affirmed.

## BACKGROUND

The administrative record reflects that Bjordal suffers from mental impairments that fluctuate in severity. He had a prior period of disability from January 1996 to May 2000. Admin. R. 15.

Bjordal was then able to work at substantial gainful activity for several years. He worked as a warehouse laborer until August 31, 2004, when he quit his job for reasons unrelated to his impairments and moved to Oregon. *Id.* at 81. Bjordal reported his mental condition did not prevent him from working, but worsened after he moved to Oregon, and he was unable to work. *Id.* Bjordal filed for disability on January 24, 2005 alleging disability from August 31, 2004. He began working as a janitor in December 2005 and received a pay increase in June 2006. *Id.* at 154. Bjordal had warnings for performance deficits and was fired for poor performance on March 7, 2007. *Id.* at 18, 141-152.

Bjordal's application was denied initially and on reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on April 4, 2007. The ALJ found Bjordal satisfied the insured status requirements for a claim under Title II through December 31, 2009. *Id.* at 17. Bjordal must establish that he was disabled on or before that date to prevail on his DIB claim. 42 U.S.C. § 423(a)(1)(A); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). The ALJ issued an opinion on June 28, 2007 finding Bjordal not disabled, which is the final decision of the Commissioner.

On November 15, 2010, the Commissioner granted a subsequent application for disability insurance benefits, finding Bjordal disabled by a schizoaffective disorder beginning May 1, 2008. The favorable decision was not part of the administrative record, but Bjordal provided a copy of the Notice of Decision as an attachment to his Reply Brief. (Doc. # 29).

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected . . . to last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).

The administrative law judge ("ALJ") applied the five-step sequential disability
determination process set forth in 20 C.F.R. § 404.1520. *Bowen v. Yuckert*, 482 U.S. 137, 140
(1987). The ALJ found, at step one, that Bjordal did not engage in substantial gainful activity (SGA)
from August 31, 2004 through December 14, 2005, and from March 7, 2007 to the date of the ALJ
decision on June 28, 2007. She found a potential for a closed period of disability from August 31,
2004 to December 15, 2005, and or a later onset of disability. Admin. R 18. At step two, she found
Bjordal has the severe impairments of schizoaffective disorder, personality disorder, borderline
intellectual functioning, and substance abuse disorder in remission. *Id.* The ALJ found, at step
three, that Bjordal did not have an impairment or combination of impairments that meets or
medically equals on of the listed impairments in 20 C.F.R. pt. 404, subpt. P, App. 1. *Id.* at 19.

The ALJ assessed Bjordal with the residual functional capacity ("RFC") to perform at all
exertional levels with limitations. *Id.* These limitations include the ability to only understand and
remember simple instructions and to carry out and maintain attention for only very simple, routine
tasks. *Id.* She further noted Bjordal is "able to work in proximity to others, but not in close
coordination with others that would require frequent interaction." *Id.* The ALJ found Bjordal is
unable to work closely with the public and would fare best with a set routine to follow and help
setting realistic plans and goals. *Id.* At step four, the ALJ found Bjordal could perform his past
relevant work as a janitor as performed. *Id.* at 20.

///

///

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)(citations omitted).

The ALJ is responsible for resolving conflicts in the medical evidence and determining credibility. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Under this standard of review, the court must uphold the Commissioner's findings of fact, provided they are supported by substantial evidence in the record as a whole, including inferences logically flowing from such evidence. *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d at 1039-1040; *Morgan v. Commissioner,* 169 F.3d 595, 599 (9th Cir. 1999); *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008).

## DISCUSSION

Bjordal contends the ALJ erred at step one by finding his work in 2006 constituted SGA. He further argues the ALJ erred at steps two and three by failing to include a diagnosis of depressive disorder with his other severe impairments. Bjordal further contends the ALJ erred in her assessment of his RFC by improperly evaluating the evidence of Dr. Kuttner and case manager Sally Wentz regarding his limitations. He also argues the ALJ erred by failing to ask a hypothetical question of the vocational expert (VE) at step four of the sequential process.

///

Bjordal requests that due to the subsequent favorable decision in 2010 that this court find him disabled from August 2004, the original date of onset, through the effective date of the subsequent opinion of May 2008. In the alternative, Bjordal asks the court for a finding of disability beginning with the August 2004 onset date, with one or two interruptions, resulting in "two closed periods of disability," followed by continuing disability as of the second ALJ decision, with that decision remaining in effect. In another alternative, Bjordal asks the court to remand the case for a finding of disability with the Commissioner to determine the onset date.

## I.      Step One

Bjordal argues that his work for SMB Site Services LLC (SBM) was not SGA. He asserts that a reprimand in January 2006 and November 2006 indicated difficulty in performing his work and that he was unable to maintain normal work but that the employer "carried and tolerated" him. Bjordal presents no evidence from SBM that this was the case. The ALJ noted Bjordal's pay increase in June 2006 indicating satisfactory work. Admin. R. 18. Although Bjordal did receive reprimands and was eventually fired, the ALJ considered this. She also noted Bjordal testified he was fired because of conflicts with his supervisors and that he was capable of performing the janitor work. *Id.* The ALJ found Bjordal worked at SGA level and this opinion was based on substantial evidence in the record.

## II.     Steps Two and Three

Bjordal argues that the ALJ did not properly consider a diagnosis of depressive disorder from Dr. Wood, an examining psychologist. He argues that because the ALJ did not find a depressive disorder to be severe her analysis was "boilerplate." At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. If there is

no finding of severe impairment, the Commissioner will find the claimant "not disabled" without continuing the remaining steps of the sequential process. 20 C.F.R.§ 404.1520(a)(4)(ii). Bjordal bears the burden of proving that his impairments are severe. 20 C.F.R. § 404.1512; *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001).

The ALJ considered the varying diagnoses that Bjordal had received from different providers and examiners, including possible schizophrenia, depressive disorder, substance abuse disorder, borderline intellectual functioning, schizoaffective disorder or depressive disorder with psychosis, learning disability, personality disorder, and schizoid and antisocial traits. Admin. R. 18-19. She found Bjordal's schizoaffective disorder, personality disorder, borderline intellectual functioning and substance abuse disorder in remission severe. The ALJ considered the four functional areas set out in the regulations for evaluating mental disorders. *Id.* at 19; 20 C.F.R. § 404.1520a. She found mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and one or two episodes of decompensation. Admin. R. 19.

The ALJ noted Dr. Woods' diagnosis and other diagnoses that appear in the record. She found Bjordal has severe mental impairments and determined the functional restrictions caused by his symptoms, regardless of the diagnosis, in making this determination. She considered the combined effect of all Bjordal's impairments, severe and nonsevere, in the remaining steps of the disability analysis. *Id.* at 16, 19, *See,* 20 C.F.R. § 404.1523. The step two inquiry is a screening device to dispose of groundless claims. *Bowen v Yuckert,* 482 U.S. at 153. Once a severe impairment is found the analysis proceeds to step three. The issue is whether the ALJ properly

assessed, in her RFC determination, whether the functional limitations from any impairment or combination of impairments affect Bjordal's ability to work.

Bjordal makes essentially the same argument at step three, that a finding of depressive disorder as severe would somehow add to his symptoms and rise to a level of disability. This argument is also unpersuasive. The issue is the functional limitations imposed by impairments, not specific diagnoses. Although Bjordal disagrees with the ALJ's interpretation of the record, he has not cited additional symptoms that flow from a depressive disorder that would change the ALJ's analysis. The ALJ's findings at steps two and three are based on substantial evidence in the record.

## III.   RFC

### A. Limitations

Bjordal argues the ALJ erred in evaluating his limitations in these functional areas: activities of daily living, social functioning, and concentration, persistence and pace. In addition to noting Bjordal's work history, the ALJ adopted the functional limitations of the nonexamining psychologists, Drs. LeBray and Henry. *Id.* at 20, 221-233, 254, 259. The Commissioner relies on medical and psychological consultants to make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose. 20 C.F.R. § 404.1527(f), SSR 96-6p. These opinions may, as in this case, constitute substantial evidence when consistent with other evidence in the record. *Morgan v. Commissioner of Social Sec.*, 169 F.3d at 602; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Bjordal argues that the ALJ erred in finding he had mild limitation in activities of daily living because he continued to live with his father. Dr. LeBray noted Bjordal was able to do some cooking, laundry, and chores. *Id.* at 233. Dr. LeBray further noted Bjordal did not need reminders

to take his medications and was able to take public transportation; ride a bike; manage his money; and shop. *Id.*

Bjordal disputes the ALJ's finding that he has moderate limitations in social functioning, citing notes from his mental health providers. Dr. LeBray noted that despite some paranoid thoughts and lack of social skills, Bjordal regularly attends AA meetings, has no problem taking public transportation and shopping, and no employment history of social problems. *Id.* The ALJ limited his RFC to not working closely with the public, and not working in close coordination with others that would require frequent interaction. *Id.* at 19.

Bjordal contends the ALJ's finding that he has moderate difficulties in concentration, persistence and pace are in error. He bases this argument on the reprimands he received while employed. As noted above, the ALJ cited Bjordal's testimony regarding his ability to understand and perform his past work requirements, and his work history. *Id.* at 20, 315-316. The ALJ limited Bjordal to work with simple insrutctions and simple, routine tasks. *Id.* at 19. The ALJ based her analysis on substantial evidence in the record.

### B. Opinion Evidence

Bjordal argues that the ALJ erred in discounting the opinions of Sally Wentz and Dr. Kuttner. The ALJ discussed the medical evidence from the Homestreet-Bayan Clinic, including the opinions of Bjordal's case manager, Sally Wentz, and Dr. Kuttner. Ms. Wentz is a lay witness. An ALJ cannot disregard the testimony of a lay witness without comment, but must give reasons that are germane to the witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Ms. Wentz believed Bjordal was employed in Arizona in a sheltered work situation. Admin. R. 121, 245-246. However, the report from Bjordal's employer in Arizona, from 2002-2004, states that Bjordal had

good attendance; required no special considerations; worked with limited supervision; could follow directions; maintained the required level of performance; and they were not aware of any psychiatric problems that would interfere with work. *Id.* at 119-120. As the ALJ noted, Bjordal voluntarily quite this job to move to Oregon with his parents. *Id.* 20, 250.

Ms. Wentz opined in her notes and on social security forms that Bjordal would not be able to work except in a sheltered workshop. *Id.* at 245-246, 273. The ALJ pointed out that Bjordal was employed at a regular job from December 2005 until March 2007. She also noted Bjordal's testimony at the hearing. *Id.* at 20. Bjordal stated he was fired from his janitorial job in 2007 because of a conflict with a supervisor, he was able to work, and he was looking for work. *Id.* at 309-312, 315-316. The ALJ provided germane reasons for rejecting her opinion.

Dr. Kuttner examined Bjordal in June 2005 and diagnosed schizoaffective disorder, alcohol abuse in remission, and mixed personality disorder with paranoid and antisocial elements. *Id.* at 241. He had a provisional diagnosis of moderate mental retardation and suspected learning disability. *Id.* Dr. Kuttner endorsed Ms. Wentz's opinion that Bjordal would always require a sheltered work environment. *Id.* at 242. Dr. Kuttner examined Bjordal in December 2005 and noted he was doing well with no symptoms and reduced his medications. *Id.* at 270.

Social security regulations specify that the most weight is given to the opinions of treating physicians, followed by examining physicians, and the least amount of weight is given to nonexamining experts. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). An ALJ may reject the opinion of a treating physician if it is controverted by other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d at 957. The ALJ may

reject an uncontroverted opinion by clear and convincing reasons supported by substantial evidence. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ may also reject physician opinions, whether or not controverted, when they are brief, conclusory and not supported by clinical findings. *Id.; Thomas v. Barnhart,* 278 F.3d at 957; *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F. 3d at 1195.

As noted above, the ALJ adopted the opinions of the non-examining psychologists, which were consistent with the record, that Bjordal could perform work with simple, routine tasks. The ALJ rejected the opinion of Dr. Kuttner regarding Bjordal being limited to a sheltered work environment because of Bjordal's work history and his testimony at the hearing. Bjordal insists that Dr. Kuttner's opinion must be taken as true because his work history demonstrates difficulty with his job, which resulted in termination. However, as noted by the ALJ, Bjordal successfully worked from 2002 until 2004 when he quit his job to move to Oregon. Admin. R. 20. The record indicates he was looking for work but remained unemployed until December 2005. *Id.* at 244, 251, 308. Bjordal was reprimanded on the job in January 2006 and again in November 2006. *Id.* at 151-152. In early 2007 he had further reprimands and was terminated on March 8, 2007. *Id.* at 140-143. He testified that was able to do his work but had difficulty with his supervisor. *Id.* at 309-310, 315-316.

The ALJ provided sufficient reasons for rejecting the opinion of Dr. Kuttner regarding Bjordal's work limitations. She correctly noted Dr. Kuttner's conclusory opinion that he would be unable to work in a nonsheltered work environment was inconsistent with Bjordal's work history in a regular work environment, with Bjordal's testimony, and the opinions of Drs. LeBray and Henry. *Thomas v. Barnhart,* 278 F.3d at 957.

///

The ALJ's findings regarding Bjordal's RFC are free of legal error and based on substantial evidence in the record. The court must uphold the ALJ's findings, even if evidence exists to support more than one rational interpretation of the evidence. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d at 1039-1040.

## IV.    Step Four

Bjordal argues that the ALJ erred at step four of the disability analysis by finding he was capable of performing his past relevant work as a janitor. Bjordal asserts that the ALJ erred by not specifically asking the vocational expert (VE) whether Bjordal could perform his past relevant work. The ALJ relied on Bjordal's RFC, his work history, and his testimony that he could perform this work. A VE's testimony is only required when the claimant has shown he cannot perform past work. *Miller v. Heckler*, 770 F.2d 845, 850 (9th Cir. 1985), *See, Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035 at 1043. The ALJ's finding at step four, which is supported by substantial evidence, does not require expert testimony.

## V.    Period of Disability

Bjordal argues that he was disabled from the time of the alleged onset until a subsequent ALJ opinion rendered in 2010. The ALJ did not err in her opinion that Bjordal was not disabled from the alleged onset date of 2004 to the date of her opinion on June 28, 2007. Bjordal does not directly challenge the ALJ opinion of 2010. However, Bjordal argues the ALJ in that opinion erred regarding SGA, and, despite Bjordal's stipulation to an onset date of May 2008, argues he was disabled before that date. To agree to this outcome would be to rule on the evidence before the ALJ in the subsequent opinion, which has not been appealed, and which is not before this court. This court does not have jurisdiction to make a ruling on the second opinion. 42 U.S.C. § 405 (g).

Bjordal alternatively argues there are two closed periods of disability from August 2004 until May 2008, with work interruptions in 2006 and 2008. The ALJ in this case appropriately reviewed the period from August 2004 until June 2007. The ALJ in the subsequent case reviewed the SGA and it was stipulated at the hearing that the date of onset was May 2008. As noted above, this court is not reviewing that decision and does not have that administrative record before us.

Finally, Bjordal asks the court to remand this case for consideration of the subsequent favorable opinion in order for the Commissioner to determine a date of onset only. Sentence six of 42 U.S.C. § 405(g), provides for a remand to consider new evidence. In order to prevail on a sentence six remand, Bjordal must demonstrate that the evidence is new and material. *Id., Mayes v. Massanari,* 262 F.3d 963 (9th Cir. 2001), as amended, 276 F.3d 453, 462-463 (9th Cir. 2001). He must also demonstrate there is good cause for failing to present the evidence earlier. *Id.*

The good cause requirement is met if there is new information that becomes available after the Commissioner's final decision and the claimant could not have obtained the new evidence at the time of the administrative proceedings. *Key v. Heckler,* 754 F.2d 1545, 1551 (9th Cir. 1985). The subsequent ALJ decision was issued in October 2010, over three years after the June 2007 decision of the first ALJ.

In order for new evidence to be material, it must "bear directly and substantially on the matter in dispute." *Ward v. Schweiker,* 686 F.2d 762, 764 (9th Cir. 1982). To meet the materiality standard, there must also be a "reasonable possibility" that the new evidence would change the outcome of the administrative hearing. *Booz v. Sec. of Health and Human Services*, 734 F.2d 1378, 1380-1381(9th Cir. 1984).

///

12 - FINDINGS AND RECOMMENDATION

That is not the case here. The subsequent opinion makes a finding of disability for a period beginning almost a year after the date of the first opinion. *Mayes v. Massanari*, 276 F.3d at 462 (new evidence that was not in dispute at the time of hearing is not material). In addition, the ALJ in the second opinion refers to medical evidence not before the first ALJ or the court. Pl.'s Supp. Br. Attach. #1 at 12. Finally, in the second opinion there was a stipulated date of onset of May 2008 due to previous SGA. The evidence of a subsequent favorable opinion that includes different medical evidence and a different time period does not require a remand. *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001). Bjordal has not provided new and material evidence that would require a sentence six remand.

## RECOMMENDATION

Based on the foregoing, the ALJ's decision that Bjordal was not disabled from 2004 until June 2007 should be affirmed. The Findings and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen days from the date this order is filed. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due no later than ten days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.
DATED this 29t day of July, 2011.

Thomas M. Coffin
United States Magistrate Judge

13 - FINDINGS AND RECOMMENDATION